**IN THE UNITED STATES DISTRICT COURT**
**EASTERN SECTION OF TENNESSEE**

BRENDA TESTER,

    Plaintiff,

v.                                                      Civil Action No.:

BALLAD HEALTH, INC.,                     JURY DEMANDED
JOHNSON CITY MEDICAL CENTER INC,
SYCAMORE SHOALS HOSPITAL INC,
TENNESSEE DEPARTMENT OF HEALTH, COMMISSIONER
RALPH ALVARADO, in his individual and official capacity,
VICTORIA SHANKLE
JOSEPH R. LEE,

    Defendants.

**COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT**

Plaintiff, by and through counsel, hereby files this Complaint against the Defendants for damages, as well as declaratory judgment and in support of the same would state the following:

**PARTIES**

1. The plaintiff is a citizen and a resident of Carter County, Tennessee and is the wife of the late Sheriff Eddie Tester, Johnson County, former Johnson County Sheriff.

2. Defendant, Ballad Health, Inc. is a non-profit corporation with its principal place of business located in Johnson City, Tennessee.

3. Defendant, Johnson City Medical Center Inc is a non-profit corporation with its principal place located in Carter, County, Tennessee and is owned by Ballad Health Inc. through the implementation of COPA.

4. Defendant, Sycamore Shoals Hospital Inc. is a non-profit corporation with its principal place located in Mountain City, Tennessee and is owned by Ballad Health, Inc. through the implementation of COPA.

5. Defendant, The Tennessee Department of Health, is a division of the Tennessee government and can be served through the Tennessee Attorney General.

6. Defendant, Ralph Alvarado, MD FACP, is the acting director of the Tennessee Department of Health.

7. Defendant Victoria Shankle, DO, is a Doctor of Osteopathic Medicine employed by Ballad Health, Inc.

8. Defendant Joseph R. Lee, MD, is a surgeon residing in Carter County, Tennessee.

## JURISDICTION AND VENUE

9. Jurisdiction and venue are proper before this Court pursuant to federal subject matter jurisdiction, 28 U.S.C. § 1331. This Court also has jurisdiction over any state law claims in this lawsuit pursuant to 28 U.S.C. § 1367.

## FACTS GIVING RISE TO CAUSE OF ACTION

10. Plaintiff was the wife of Sheriff Eddie Tester, the Johnson County Sheriff for the last five years and had been reelected for another four-year terms prior to his sudden death.

11. Prior to becoming Sheriff of Johnson County, Sheriff Tester was a Tennessee State Trooper for eighteen years.

12. Throughout Sheriff Tester's career serving the citizens of Tennessee in law enforcement he received numerous awards and accolades for his outstanding service. Sheriff Tester's famous quote to the people he spent his life protecting was "If you need me, let me know."

13. In early 2023, Sheriff Tester began experiencing fatigue, which he had not had a problem with previously.

14. Sheriff Tester was admitted to Sycamore Shoals Hospital on August 8, 2023 for incidental finding of Pulmonary embolus (blood clot in the lung) during a cat scan of the abdomen. Defendant Victoria Shankle, DO placed Sheriff Tester on a Heparin drip (IV, anticoagulant "blood thinner") throughout Sheriff's inpatient stay.

15. Sycamore Shoals Hospital is located in the City of Elizabethton, Carter County, Tennessee and is part of Ballard Health System Inc. (hereinafter "Ballard").

16. Carter County is approximately 348 square miles, which comprises of both urban and rural areas, and contains approximately 700 miles of roadways. According to the United States Census Bureau, as of July 1, 2022, the estimated population for Carter County is 56,500 and according to the Carter County Planning and Zoning Office, from July 2019 until April of 2023, 307 new construction residential housing permits were issued, and 224 new permits issued for single-and double-wide mobile homes. That does not include the City of Elizabethton.

17. During Sheriff Tester's stay Sycamore Shoals Hospital was understaffed, overcrowded.

18. On August 9, 2023, Defendant Victoria Shankle determined that before discharging Sheriff Tester later that day that he should be sent by ambulance to have a liver biopsy as an outpatient at Ballard owned Johnson City Medical Center.

19. There was no need to do a liver biopsy that day especially since Sherriff Tester was on blood thinners and protocol is to wait for the patient to be off blood thinners for at least five to seven days before doing a liver biopsy.

20. Despite Sherriff Tester being on blood thinners, Dr. Lee performed the liver biopsy which was not needed.

21. Sheriff Tester was fraudulently billed for outpatient surgery while he was an inpatient at Sycamore Sholes Hospital.

22. Upon information and belief Sycamore Shoals did not transmit the inpatient records to Johnson City Medical Center.

23. Sheriff Tester's liver biopsy was completed at Johnson City Medical Center on August 10, 2023, and he was sent to recovery at approximately 9:56 AM and was thereafter discharged back to Sycamore Shoals Medical Center via ambulance transport. Sheriff Tester was thereafter discharged and sent home.

24. Sycamore Shoals advertises that it has surgical services, however upon information and belief it no longer exists or is very limited. This violates state and federal law.

25. Sheriff Tester returned to the Johnson County Community Hospital Emergency Department by ambulance on August 11, 2023 in full cardiac arrest. The paramedics maintained cardiopulmonary resuscitation efforts throughout the transport to Johnson County Community Hospital.

26. Sheriff Tester's lab results once at Johnson County Community Hospital revealed a hemoglobin level of 5.4 initially and thereafter down to 4.1.

27. Resuscitation efforts continued on Sheriff Tester for 25 to 30 minutes ambulance ride and thereafter for an additional fifty-seven minutes at Johnson County Community Hospital.

28. The medical examiner noted on Sheriff Tester's death certificate that the liver biopsy was a cause of his death.

29. Indeed, Defendant Ballad Health, Inc., and Defendant Victoria Shankle, DO grossly fell outside the standard of care regarding a liver biopsy with a patient that was

actively taking Heparin by not evaluating Sheriff Tester to ensure he had no complications from bleeding out due to the Heparin. Had the proper standard of care been followed, Sheriff Tester would not have suffered life ending internal blood loss, which lead to his cardiac arrest and ultimately his sudden death.

30. The lab work that was consistently being pulled on Sheriff Tester throughout his short stay at the hospital which should have alerted Defendants Ballad Health, Inc. Johnson City Medical Center, Sycamore Shoals Medical Center, and Dr. Shankle that his hemoglobin levels were consistently and steadily dropping.

31. As noted, lab results were run during the fifty-seven minutes Johnson County Community Hospital was performing cardiopulmonary resuscitation efforts and Sheriff Tester's hemoglobin results were 5.4. Normal hemoglobin levels in a male of Sheriff Tester's age are 13.5 to 18.

32. Sheriff Tester fell below the acceptable standard due to the following:

    a. In order to save money and in violation of both state and federal laws Ballard understaffs its hospitals.

    b. Failed to address the drop in Sheriff Tester's hemoglobin levels from his labs both preop and postop;

    c. Ordered a percutaneous liver biopsy and performed it when Sheriff Tester's red blood cell count continued to decline;

    d. Defendant Shankel failed to address Sheriff Tester's declining red blood cell count at discharge;

    e. Failure to properly train nursing staff with regard to post-op live biopsy care;

- f. Defendant Lee fell to follow protocol by performing the liver biopsy and not waiting for Sheriff Tester to be off blood thinners for five to seven days.
- g. Failure of the hospital pharmacy staff to recognize the potential contradiction of an anticoagulant coupled with patient post op liver biopsy.
- h. Failure to properly train nursing staff in post operative liver biopsy care.
- i. Failed to delay the percutaneous live biopsy until resolution of the pulmonary embolus and the cessation of anticoagulation.
- j. Failed to delay the percutaneous liver biopsy and performed the same when Sheriff Tester's hemoglobin, hematocrit and platelet levels continued to decline preop.
- k. Continued to administer anticoagulant to Sheriff Tester through an intravenous drip up to the time of the live biopsy operation despite the alarming lab results.
- l. Discharged Sheriff Tester without keeping him for observation with a prescription for Eliquis, another well-known anticoagulant with instructions to take it daily.

33. The massive standard of care failure and resulting gross negligence of the Defendants Ballad Health, Inc., and Victoria Shankle, DO resulted in Sheriff Tester's continued decline in his hematocrit, hemoglobin, and platelets levels leading to cardiac arrest and ultimately his sudden death.

34. While lifesaving resuscitation efforts were being performed on Sheriff Tester, his lab results revealed a hemoglobin level of 4.1, hematocrit level of 14.2 and platelets level of 71. These lab results are indicative of severe blood loss. Sheriff Tester was sent home by Defendant Ballad Health, Inc. and Victoria Shankle DO to bleed to death.

## Tennessee Health Department's Certificate of Public Advantage Program ("COPA")

35. COPA is the written approval by the Tennessee Department of Health (TDH) that governs a Cooperative Agreement (a merger) among two or more hospitals. A COPA provides state action immunity to the hospitals from state and federal antitrust laws by replacing competition with state regulation and Active Supervision. The goal of the COPA process is to protect the interests of the public in the region affected and the State. The Defendant hospital corporations named herein operate under a non-profit public benefit corporation sanctioned by Tennessee which was organized for the public benefit.

36. TDH has the authority to issue a COPA if applicants pursuing a COPA demonstrate that the likely benefits of the proposed Cooperative Agreement outweigh the likely disadvantages that would result from the loss of *competition*. The ability to grant a COPA is authorized by Tennessee's Hospital Cooperation Act of 1993, amended in 2015. Permanent Rules 1200-38-01 implement T.C.A. § 68-11-1301 – 68-11-1309.

37. Tennessee Department of Health Commissioner ("Commissioner"), John Dreyzehner, MD, MPH, announced January 31, 2018 that the state is officially allowing a merger of Wellmont Health System and Mountain States Health Alliance by issuing a Certificate of Public Advantage or COPA to their parent company, Ballad Health. Nothing in the COPA exempts Ballard from compliance with laws governing certificates of need. **Exhibit A**.

38. On June 12, 2023, the Tennessee Department of Health held a public hearing and the current Commissioner, Defendant Dr. Alvarado, spoke about Ballard's COPA and the Terms of Certification. **Exhibit B**.

39. Dr. Alvarado's explained the Departments role as being active supervision to ensure the merger continues to provide a public advantage to the citizens of the region and while their

role was not to manage the day-to-day operations of Ballard but to see improvements in health and wellbeing of the citizens of the region and to maintain access to high quality health care. That the goals have served and will continue to serve as a guide to our data-centered approach to evaluate any plans, strategies, and tactics proposed by Ballard Health. **Exhibit B**, pages 5-6.

40. The Active Supervision structure required by the COPA Act shall include a COPA Compliance Office, a Local Advisory Council, and a COPA Monitor, in addition to the Commissioner and the Department of Health's Division of Health Planning ("Department"). In addition, the State of Tennessee will retain a COPA Monitor (the "COPA Monitor") that will be responsible for evaluating the continued Public Advantage of the COPA by monitoring the New Health's compliance with the COPA and the Terms of Certification, and by collaborating with the Department to evaluate performance against the Index. The COPA Monitor will be an independent firm with sufficient expertise (or the ability to contract for such expertise) in hospital finance and accounting, auditing, population health management, community health improvement, and data/statistics. The New Health System will be responsible for the expenses related to the COPA Monitor pursuant to Tenn. Code Ann. § 68-11-1307 and COPA Rule 1200-38-01-03(1). Pursuant to Tennessee law, the Department is tasked with reviewing, seeking modification of, or terminating a COPA. (Tenn. Code Ann. § 68-11-1303(g)).

41. Since the merger, Ballard has become the only option for hospital care for most of about 1.1 million residents in a 29-coiunty region at the nexus of Tennessee, Virginia, Kentucky and North Carolina.

42. Multiple citizens testified to shocking and outrageous behavior by Ballard at the June 12, 2023, COPA Public Hearing, including but not limited to a prior nurse testimony that once Ballad took over, the hospitals went from being well staffed to understaffed, the patient ratios were higher than ever, were told to start IVs, draw labs, give meds, et cetera, in the waiting rooms, meds such as morphine were encouraged to be given in the waiting room to keep patient's satisfaction up. Exhibit B, Pages 40-41. An OB-GYN physician who had practiced in Johnson City since 2008 further testified that her patients beg her to go anywhere except a Ballard facility and that Ballard was manipulating data and that the quality of care has digressed to conditions that just are not deemed safe. Exhibit B, Pgs. 51-54. Other citizens testified to the fact that Ballard Health was slowly but surely removing services at Sycamore Shoals and believe it would continue until it is either closed down or turns into a patch-and-send station. Exhibit B, Page 40.

43. Dr. Alvardo is well aware that Ballard's hospitals consistently fall short of performance targets established by the state, however, in a shocking cover up Tennessee uses scoring rubric which largely ignores the hospitals' performance, and only 5% of Ballard's final score is based on actual quality of care, and Ballad has suffered no penalty for failing to meet the state's goals in about 50 acres – including surgery complications, emergency room speed and patient satisfaction.

44. On September 23, 2023, KFF Health News reported that Ballad failed to meet about 80% of benchmarks designed to monitor and improve its quality of care- including rates of infection and death-in the most recent year for which data is available and that Ballad failed to fulfill its annual charity care obligation it made to Tennessee,

falling short by about $148 million over a four-year span. In those same years, Ballard took thousands of patients to court to collect unpaid bills. Federal health officials cite some of the same problems this year in issuing one-star ratings to three Ballad hospitals, including a flagship, Johnson City Medical Center. https://kffhealthnews.org/news/article/appalachia-ballad-health-copa-monopoly-charity-care-quality/

45. Despite getting rid of employees, disregarding the laws under the certificate of need, which despite having a COPA agreement would still have to follow, not offering OB-GYN services, ICU, surgery

46. The non-profit generated net income of more than $145 million in 2022 from $63 million in 2021 and also received $175 million in pandemic relief funds, according to an S&P Global Ratings independent analysis, which excludes items like gains and losses separate from hospital operations.

### Count I-Violation of 42 U.S.C. § 1983 as to all Defendants.

47. Plaintiff restates paragraphs 1-46 in support of Count I.

48. Plaintiff and her late husband, Sheriff Eddie Tester, are entitled to the protections of the Affordable Care Act.

49. Defendants abrogated the rights afforded to the Plaintiff and her late husband Sheriff Eddie Tester by way of the Affordable Care Act, under of color of law, as Tennessee has plenary control over the Defendant hospitals herein pursuant to Tennessee's COPA.

50. By Tennessee allowing the Defendants herein to monopolize and in doing so harm the public as set forth herein, Tennessee's COPA is unconstitutional and cannot meet constitutional scrutiny in any sense of the word.

51. As a direct result of the abrogation of the rights afforded to the Plaintiff and her late husband under the Affordable Care Act the Defendants woefully failed to exercise continuing supervision over the Hospitals herein that Dr. Alvarado is tasked with.

52. As a result, Plaintiff has suffered damages by way of loss of life, her late husband Sheriff Eddie Tester.

## Count II-Negligence.

53. Plaintiff restates paragraphs 1-52 in support of Count II.

54. The Defendants named herein owed a reasonable duty of care to the Plaintiff, her late husband and others in her situation needing proper medical healthcare services.

55. The Defendants herein failed in their duty of reasonable care owed to the Plaintiff.

56. As a result of the failure of the Defendants duty owed to the Plaintiff, her husband, Sheriff Eddie Tester lost his life.

57. The Defendants negligence herein is the direct and proximate cause of the damages the Plaintiff has sustained.

## Count III-MENTAL AND EMOTIONAL ANGUISH

58. Plaintiff restates Paragraphs 1-57 in support of Count III.

59. The sudden loss of Plaintiff's husband caused by the gross negligence of the Defendants herein have caused the Plaintiff severe mental and emotional distress.

60. Plaintiff had to see her late husband in cardiac arrest and the EMTs trying to save his life as he bled out from his internal incisions from the liver biopsy.

61. Plaintiff had to undergo hours of the medical team attempting cardiopulmonary resuscitation of her late husband to no avail.

62. As a result of the Defendants gross negligence, the Plaintiff has suffered emotional damage manifesting itself with difficulty sleeping, nightmares, nausea, inability to eat, vomiting, depression, anxiety, etc.

63. Plaintiff has had to seek medical professional assistance as a direct result of the Defendants negligence herein and it has caused the Plaintiff significant damages.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS FOR JUDGMENT AGAINST ALL DEFENDANTS IN THE AMOUNT OF $7,500,000.00 PLUS ATTORNEY'S FEES AND EXPENSES, FOR A DECLARTORY JUDGMENT THAT TENNESSEE'S COPA, WHICH BALLAD HEALTH, INC. OPERATES UNDER, IS UNCONSITUTIONAL AND FOR A JURY TO TRY THIS CAUSE.**

    Respectfully submitted,

    s/Russ Egli
    Russ Egli, BPR#24408
    The Egli Law Firm
    Attorney for the Plaintiff
    11109 Lake Ridge Drive, FL3
    Knoxville, TN 37934
    865-274-8872