UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| BRENDA TESTER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:24-CV-00145-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| BALLAD HEALTH, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of the unfortunate death of Eddie Tester, the former sheriff of Johnson County, Tennessee. His widow, Plaintiff Brenda Tester, sued Ballad Health, Inc.,[1] Johnson City Medical Center, Sycamore Shoals Hospital Inc. ("Hospital Defendants"), the Tennessee Department of Health and its acting Director, Ralph Alvarado ("State Defendants"), and Doctors Victoria Shankle and Joseph Lee for negligence. [Doc. 32 at ¶¶ 2–8]. She claims that the medical care her late husband received violated his "due process rights to be free from cruel and unusual punishment" and constituted a "deliberate indifference to his medical needs…." [Doc. 32, pg. 13, "Count 1"). Because she has failed to state a cause of action under 42 U.S.C. § 1983, her claims will be dismissed as outlined herein. The Court declines to retain supplemental jurisdiction over the remaining state claims and they are dismissed without prejudice.

---

[1] Ballad Health is a non-profit corporation that owns both Johnson City Medical Center and Sycamore Shoals Hospital. [Doc. 32, at ¶¶ 2–4].

1

I.   BACKGROUND

In 2023, Sheriff Tester began experiencing fatigue. [Doc. 32, at ¶ 13].[2] He was admitted to Sycamore Shoals Hospital, where he was diagnosed with a pulmonary embolism—a blood clot in the lung. [*Id.* ¶ 14]. To treat the blood clot, Dr. Shankle placed Sheriff Tester on Heparin, a blood thinner [*Id.* ¶ 14]. She recommended that Sheriff Tester undergo a liver biopsy and ordered him transported via ambulance to Johnson City Medical Center. [*Id.* ¶¶ 28–29]. Sheriff Tester arrived at Johnson City Medical Center, where Dr. Lee performed the liver biopsy. [*Id.* ¶¶ 30, 32]. Sheriff Tester was then discharged back to Sycamore Shoals and then sent home. [*Id.* ¶ 32].

The next day Sheriff Tester went into cardiac arrest [*Id.* ¶ 34]. He was transported to Johnson County Community Hospital [*Id.* ¶ 34]. Paramedics tried to resuscitate him for about 25-30 minutes on the ambulance ride, and for 57 minutes at the hospital [*Id.* ¶¶ 34, 36]. The efforts failed [*Id.* ¶ 37].

The autopsy listed "the liver biopsy []as a cause of death." [*Id.* ¶ 37]. Plaintiff contends that the Hospital Defendants and Doctors Shankle and Lee "grossly fell outside the standard of care" when they ordered a liver biopsy while Sheriff Tester was taking Haparin, a blood thinner [*Id.* ¶¶ 38, 41]. She alleges that "had the proper standard of care been followed, Sherrif Tester would not have suffered life ending internal blood loss, which [led] to his cardiac arrest and ultimately his sudden death." [*Id.* ¶ 38]. Plaintiff alleges that Dr. Lee failed to follow standard medical practice by not "waiting for Sheriff Tester to be off blood thinners for five to seven days" before performing the liver biopsy. [*Id.* ¶ 41(f)]. In short, Plaintiff maintains that the liver biopsy

---

[2] The Court accepts the facts in the First Amended Complaint as true to decide the motion to dismiss. Plaintiff tried to amend her complaint a second time, but did not obtain the consent of the parties or leave of Court. *See* Fed. R. Civ. P. 15(a). The magistrate judge struck the Second Amended Complaint, and the Court overruled Plaintiff's objection to that decision. So the operative pleading is the First Amended Complaint. [Doc. 32].

2

caused Sheriff Tester's death, and the Hospital Defendants and Doctors Shankle and Lee never should have performed it because Sheriff Tester was actively taking Heparin, a blood thinner [*Id.* ¶¶ 38–41]. She claims this act of medical malpractice constituted "cruel and unusual punishment" under § 1983 and violated Sheriff Tester's constitutional rights.

Plaintiff invoked the Court's subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. [*Id.* ¶ 9]. The Complaint contains four claims: (1) violation of Sheriff Tester's due process right to be free from cruel and unusual punishment, i.e., deliberate indifference to his medical needs (against all defendants); (2) respondeat superior (against Ballad Health and the State of Tennessee); (3) negligence (against the Hospital Defendants and doctors); and (4) mental and emotional anguish (against all defendants). And although it's not stated as a claim, Plaintiff's prayer for relief includes a request for a declaratory judgment that "Tennessee's COPA (Certificate of Public Advantage) is unconstitutional." [*Id.* pg. 16].

Defendants—in separate groups—moved to dismiss the claims against them [Docs. 38, 41, 46. 64]. An Order of the Court required Plaintiff to respond to the motions to dismiss by March 7, 2025. [Doc. 77]. She responded only to the State Defendants' motion. [Doc. 78]. Plaintiff received several extensions of time to respond to the motions to dismiss [Docs. 77, 71, 59, 53]. Because Plaintiff ignored the deadlines, she forfeited her right to respond. *See* Local Rule 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."). The motions are therefore ripe for adjudication, and the Court addresses them in turn.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that

3

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" when the plaintiff pleads facts that create a reasonable inference that the defendant is liable for the conduct alleged in the complaint. *Id.*

A Rule 12(b)(6) motion to dismiss requires the Court to construe the complaint in the light most favorable to the plaintiff. *Id.* The Court accepts the complaint's well-pleaded factual allegations as true and draws all inferences in favor of the plaintiff. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). But the Court is not required to accept as true legal conclusions or the recitation of legal elements. *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

#### A. THE § 1983 CLAIM

Tester first sues all Defendants under 42 U.S.C. § 1983. She alleges that the Defendants "abrogated the rights afforded to the Plaintiff and her late husband under both federal and state statutes" including the Affordable Care Act and 42 C.F.R. § 482.43. [Doc. 32, ¶¶ 58–59]. The issue is whether Tester plausibly stated a claim to relief against each defendant under § 1983.

"There are two elements to a § 1983 claim." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012). "First, a plaintiff must allege that a defendant acted under color of state law." *Id.* "Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Id.* The Court will address Tester's allegations against each defendant in turn.

##### 1. The Hospital Defendants

The first issue here is whether the Hospital Defendants are state actors under § 1983. "A private actor acts under color of state law when its conduct is 'fairly attributable to the state.'"

4

*Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 947 (1982)). There are three tests to determine whether conduct is fairly attributable to the state: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Id.* (citation omitted). The Court will address each in turn.

"Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). This is a narrow exception. "Only functions like holding elections, exercising eminent domain, and operating a company-owned town, fall under this category of state action." *Id.* (internal citations and quotations omitted). Tester did not allege that the Hospital Defendants engaged in any type of conduct "traditionally reserved exclusively to the state." *Id.* Several courts to consider the issue have concluded that operating a hospital or providing medical care is not a traditional, exclusive, state function. *See Mills v. St. Vincent Charity Hosp.*, No. 1:12-CV-1599, 2012 WL 5383407, *2 (N.D. Ohio Nov. 1, 2012) ("Providing medical care is not a power reserved exclusively to the state."); *Edwards v. Miller*, No. 3:15-CV-408, 2017 WL 6610084, *2, (E.D. Tenn. 2017) ("[M]edical care has not been a power traditionally reserved to the state."). Providing medical care is not a traditional, nor an exclusive, state function. The Hospital Defendants are not state actors under the public function test.

They are also not state actors under the state compulsion test. This test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The state compulsion test requires "[m]ore than mere approval or acquiescence in the initiatives of the private party." *Id.* And generally, "the fact that a corporation is subject to some degree of state regulation, or is granted some special rights or

5

privileges by the state," is not enough to turn the private party into a state actor. *Palmer v. Columbia Gas Co. of Ohio*, 342 F. Supp. 241, 244 (N.D. Ohio 1972).

Tester's Complaint does not allege any facts rising to this kind of coercion. Indeed, all she alleges is that the Hospital Defendants operate under a favorable agreement with the State of Tennessee that limits their competition. [Doc. 32, ¶¶ 44–55]. That agreement—called a Certificate of Public Advantage ("COPA")—"provides state action immunity to the hospitals from state and federal antitrust laws by replacing competition with state regulation and Active Supervision." [*Id.* ¶ 44]. According to Tester, the COPA turns the Hospital Defendants into state actors for antitrust purposes. [*Id.* ¶ 44]. The Sixth Circuit has made clear that the inquiry is whether the state exercises such coercive power or encouragement that the choice of the private party can be attributed to the state. *Wolotsky*, 960 F.2d at 1335. The Complaint is devoid of any allegations to suggest that Tennessee had any role to play in the medical care the Hospital Defendants offered Sheriff Tester. Rather, the allegation seems to be that they must have *approved of* the course of treatment because the Hospital Defendants operate under a COPA. That allegation, at best, is mere approval or acquiescence, which is not enough to transform the Hospital Defendants into state actors. *Id.*

Finally, the symbiotic or nexus test. Under this test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the state itself." *Id.* "Merely because a business is subject to state regulation does not by itself convert its action into state action." *Id.* "Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of [§] 1983." *Id.* "The inquiry is fact-specific, and the presence of state action is determined on a

6

Case 2:24-cv-00145-DCLC-CRW   Document 84   Filed 08/29/25   Page 6 of 12
PageID #: 1069

case-by-case basis." *Chapman*, 319 F.3d at 834. "[I]t is possible to determine . . . whether a person acted under color of state law as a matter of law," though "there may remain in some instances unanswered questions of fact regarding the proper characterization of the actions for the jury to decide." *Layne v. Sampley*, 672 F.2d 12 (6th Cir. 1980) (internal citations and quotations omitted).

The Complaint here contains no allegations that Tennessee was "intimately involved" in Sheriff Tester's care. The only allegations Tester makes against the State are related to the COPA and its implementation. [*Id.* ¶¶ 44–55]. Specifically, Tester alleges that Dr. Alvarado was aware of and covered up the alleged poor performance of the Hospital Defendants, [*Id.* ¶ 52], and that the COPA requires "active supervision" by the State. [*Id.* ¶ 49]. In short, Tester alleges that Dr. Alvarado and the State failed to supervise the Hospital Defendants. [*Id.* at ¶ 61]. Even taken as true, those allegations do not show that the State was "intimately involved" in Sheriff Tester's medical treatment. While Tester alleges that the COPA requires the State to engage in active supervision over the hospitals, she makes no allegation that it requires an officer of the state to sign off on the judgment calls of doctors made in particular cases. And, of course, that the Hospital Defendants were subject to some regulation under the COPA does not change the outcome. *Wolotsky*, 960 F.2d at 1335 ("Merely because a business is subject to state regulation does not by itself convert its action into state action"). Instead, Plaintiff must show "that the state is intimately involved in *the challenged private conduct* in order for that conduct to be attributed to the state for purposes of section 1983." *Id.* She cannot show that in this case.

Accordingly, Tester cannot show under any test that the Hospital Defendants were state actors. As a result, she cannot maintain a § 1983 claim against them, and their Motion to Dismiss is **GRANTED.**

7

### 2. Doctors Shankle and Lee

The claims against Drs. Shankle and Lee are easily dispensed with. As the Court explained, the Hospital Defendants were not state actors. The Complaint contains no facts unique to either of these Defendants that would show that they were somehow *more* intertwined with the State than the Hospital Defendants themselves. She has not adequately pled that these doctors are state actors. A non-incarcerated plaintiff cannot maintain a § 1983 action, even for deliberate indifference to medical needs as Tester claims here, against a non-state actor.[3] *See Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996)(finding that given the "private status" of the defendant doctors, and the absence of a contract requiring collaborative efforts between the doctors and the state, they are not state actors). Their motions to dismiss are **GRANTED.**

### 3. The State Defendants

Finally, the Court turns to the State Defendants. Tester sued the Tennessee Department of Health and its Commissioner (at the time of the suit), Ralph Alvarado. She sued Alvarado in his official and individual capacities. Both moved to dismiss.

First, Tester cannot maintain a § 1983 action against the Tennessee Department of Health. The Tennessee Department of Health is a state agency. *See Wright v. Tenn. Dep't of Health Off. of Vital Recs.*, No. 217CV2464, 2017 WL 6372243, *3 (W.D. Tenn. Dec. 13, 2017) (noting that the Tennessee Department of Health is a state agency). Tester concedes as much. [Doc. 32, ¶ 5]. And "[t]he Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials sued in their official capacities for damages." *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009). The same is true of Tester's claims against Alvarado in his official capacity. This immunity is subject to only three exceptions: (1) when the state waives its immunity by consenting to the

---

[3] Nor can Tester sue under 42 C.F.R. § 482.43 because federal regulations do not create private causes of action. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F. 3d 299, 309 (6th Cir. 2000).

suit; (2) when Congress has expressly abrogated the states' sovereign immunity; and (3) when the doctrine of *Ex Parte Young*, 209 U.S. 123 (1928) applies. *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 733 (6th Cir. 2022).

None apply here. The state has not waived its sovereign immunity and Congress has not abrogated sovereign immunity through § 1983 in this case. *Quern v. Jordan*, 440 U.S. 332, 340–41 (1979). And *Ex Parte Young* applies only to suits for "prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights." *Skatemore*, 40 F.4th at 733. Tester's Complaint: (1) does not seek injunctive relief; and (2) alleges that the violation already occurred.[4] No exception applies. Their motion to dismiss is **GRANTED**, and the claims against the Tennessee Department of Health, and against Alvarado, must be dismissed because they are immune from suit.

The only remaining claim against a State Defendant is against Alvarado in his personal capacity. Tester alleges that Alvarado failed to supervise the Hospital Defendants as the COPA required. [*Id.* ¶ 61]. Tester also alleges that "Ballad and its employees committed the tort and civil rights violations as set forth [in the Complaint] . . . and therefore as the Master of the Master Servant relationship it too is liable herein." [*Id.* ¶ 65].

First, as to Plaintiff's *respondeat superior* claim of liability, it is well-settled that "[a]n official cannot be held liable for the constitutional violations of subordinates under a theory of *respondeat superior* . . . ." *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025). If Tester attempts a failure to supervise claim, it fails as well. An official is not liable under § 1983 "'simply because . . . she was charged with overseeing' subordinate officers who violated the plaintiff's

---

[4] The Court notes also that Tester could not bring the action against the Tennessee Department of Health because *Ex Parte Young* excepts from immunity only claims against state officials, not states themselves or their agencies. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 599 (6th Cir. 2016).

9

constitutional rights." *Id.* (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016)). Rather, "[t]he complaint must plead that the official violated the Constitution through her own actions," and failure to act does not suffice to establish supervisory liability. *Id.*

Tester's Complaint does not allege that Alvarado personally violated Sheriff Tester's rights. It alleges that he had a responsibility to supervise the Hospital Defendants under the COPA [*Id.* ¶ 48], that he knew the Hospital Defendants consistently fell short of performance targets [*Id.* ¶ 52], and that he failed to supervise them. [*Id.* ¶ 61]. But Tester concedes that the Hospital Defendants committed the alleged tort and civil rights violations; she does not allege that Alvarado committed any such violation. These allegations are insufficient to impute liability to Alvarado. Finally, as a matter of common sense, Alvarado cannot be liable as a state actor for failing to supervise non-state actors, like the Hospital Defendants. The Tennessee Department of Health and Alvarado, in his official capacity, are immune from suit. And Tester failed to state a claim against Alvarado in his personal capacity. The State Defendants' motions to dismiss are **GRANTED.**

### B. CONSTITUTIONAL CHALLENGE TO COPA

Tester also seeks a declaratory judgment "that Tennessee's COPA … is unconstitutional." [Doc. 32, pg. 16]. Tester has no standing to challenge Tennessee's COPA procedures, nor the Hospital Cooperation Act under which COPAs are granted.

Before the Court can hear a case, a plaintiff must have constitutional standing to sue.

> To have standing, a plaintiff must establish (1) an injury in fact, meaning an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, i.e., the injury complained of must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Phillips v. DeWine*, 841 F.3d 405, 414 (6th Cir. 2016) (internal quotations and citations omitted) (cleaned up).[5] Even assuming that Tester could show an injury in fact, she cannot show that the injury is fairly traceable to the State. Again, Tester concedes that the Hospital Defendants and the Doctors committed the alleged tortious acts. [*Id.* ¶ 65]. But none of those Defendants are state actors. It is implausible that—even assuming Sheriff Tester received negligent care—it could be fairly traced to the State Defendants. Indeed, there are no allegations to that effect.

Nor can Tester show that the declaratory judgment requested would redress her injury. The injury Tester alleges stems from the death of her husband. Specifically, she alleges that she has suffered severe emotional and mental distress. [*Id.* ¶ 75]. A declaratory judgment that the Tennessee Hospital Cooperation Act is unconstitutional would do nothing to remedy the injury. Tester has no standing to challenge the COPA or its enabling statute. "The Declaratory Judgment Act 'does not alter these rules or otherwise enable federal courts to deliver 'an expression of opinion' about the validity of laws.'" *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022)(quoting *Saginaw County v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)). Because Tester has no standing, the Court lacks subject matter jurisdiction over her declaratory judgment claim. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

### C. REMAINING CLAIMS

The Court has no subject matter jurisdiction over Tester's § 1983 claim to the extent she makes it against non-state actors. *See Kissinger v. Mahoning Cnty. Republican Party*, 677 F. Supp.

---

[5] Tester does not specify against which Defendant she brings the declaratory relief action. This request appears only at the end of the Complaint, in the prayer for relief. The Court assumes Tester brought the declaratory judgment action against the State Defendants, as it's unclear how the Hospital Defendants, or the Doctors named in this action would be at all responsible for the Tennessee legislature enacting a statute. To the extent that Tester attempts to pin the Tennessee Hospital Cooperation Act on any non-State Defendant, the Court finds that she has not met her pleading burden under Rule 12(b)(6).

11

3d 716, 728 (N.D. Ohio 2023). And the Court has no subject matter jurisdiction over Tester's declaratory judgment claim because she lacks standing. The only claim that would normally grant this Court independent subject matter jurisdiction is the § 1983 claim against Alvarado in his personal capacity. And on that claim, Tester failed to state a claim to relief plausible on its face. All those claims should be dismissed. In the absence of a claim invoking the Court's subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining claims, which sound in state law. *See Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

## IV. CONCLUSION

For the reasons foregoing, Defendants' Motions to Dismiss [Docs. 38, 41, 46] are **GRANTED** on the § 1983 claim and the claim for declaratory judgment for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Those claims are **DISMISSED WITH PREJUDICE.** The Court declines to exercise supplemental jurisdiction over the remaining claims, and they are **DISMISSED WITHOUT PREJUDICE**. Defendants' Motion for Ruling on the Motions to Dismiss Prior to Scheduling [Doc. 56] and Plaintiff's Motion to Strike [Doc. 63] are **DENIED AS MOOT.** A separate judgment shall enter.

SO ORDERED:

s/ Clifton L. Corker<br>
United States District Judge

12

Case 2:24-cv-00145-DCLC-CRW   Document 84   Filed 08/29/25   Page 12 of 12
PageID #: 1075